UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JUAN A. MOLINA,

                    Plaintiff,

                v.

JOHN JAY INSTITUTE FOR JUSTICE AND
OPPORTUNITY/CITY UNIVERSITY OF
NEW YORK, et al.,

                   Defendants.

---

23 Civ. 1493 (DEH)

**OPINION
AND ORDER**

---

DALE E. HO, United States District Judge:

This is an action brought by Plaintiff Juan A. Molina against the John Jay Institute for Justice and Opportunity/City University of New York ("CUNY"), Research Consortium of John Jay, Research Foundation of The City University of New York ("RF CUNY"), and individual Defendants Ann Jacobs, Susan Batkin, and Katheryne Ralph.[1]  Plaintiff brings claims of retaliation under the Federal False Claims Act ("FCA"),[2] New York False Claims Act (the "NYFCA");[3] and discrimination on the basis of race and sexual orientation, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"),[4] Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), the New York State Human Rights Law ("NYSHRL"),[5] and the New York City Human Rights Law ("NYCHRL").[6]  Before the Court

---

[1] *See* First Am. Compl. ("FAC"), ECF No. 58.

[2] 31 U.S.C. § 3729, *et seq.*

[3] N.Y. State Fin. Law §§ 187-194.

[4] 42 U.S.C. § 2000e.

[5] N.Y. Exec. Law § 290 *et seq.*

[6] N.Y.C. Admin. Code § 8-101.

are Defendants' three unopposed motions to dismiss.[7]  For the reasons set forth below,

Defendants' motions to dismiss are **GRANTED**.

## BACKGROUND

"The following facts are drawn from the [Amended] [C]omplaint and are assumed to be

true for the purposes of this motion."[8]

### I.    The Parties

Plaintiff Molina "identifies as an Afro-Latino pansexual male," who has a bachelor's

degree and "over 20 years of applicable professional experience."[9]  Plaintiff has "completed the

coursework for a master's in public administration from NYU."[10]  Plaintiff is a resident of New

Jersey.[11]  Plaintiff has two prior convictions and "he was incarcerated from 1998 to 2007 and

again from 2016 to 2019."[12]

Defendant John Jay Institute for Justice and Opportunity (the "Institute") is part of the

public City University of New York ("CUNY"), which provides "a continuum of services within

correctional facilities and in the community that engages with system impacted people wherever

they are in their academic journey, connecting them to programs at CUNY and services within

---

[7] First, John Jay Institute for Justice and Opportunity/City University of New York and Research
Consortium of John Jay filed a motion to dismiss, *see* ECF No. 61.  Second, Defendant Ann
Jacobs filed a motion to dismiss, *see* ECF No. 64.  Third, Defendants Susan Batkin, Katheryne
Ralph, and RF CUNY filed a motion to dismiss, *see* ECF No. 66.

[8] *Cooper v. Templeton*, 629 F. Supp. 3d 223, 228 (S.D.N.Y. 2022), *aff'd sub nom. Cooper v.
Franklin Templeton Invs.*, No. 22 Civ. 2763, 2023 WL 3882977 (2d Cir. June 8, 2023).  All
references to Rules are to the Federal Rules of Civil Procedure.  In all quotations from cases, the
Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless
otherwise indicated.

[9] FAC ¶¶ 6, 10, 11.

[10] *Id.* ¶ 10.

[11] *Id.* ¶ 9.

[12] *Id.* ¶ 8.

New York City."[13]  The Institute has between 40 and 50 employees, and employed Plaintiff and individual Defendants Jacobs, Batkin, and Ralph.[14]

Defendant Research Consortium of John Jay "operates under John Jay College's[] Office for the Advancement of Research" and is part of the public CUNY, with the purpose of addressing "challenges of the criminal justice community and protecting the public's safety."[15]

Defendant RF CUNY is a private 501(c)(3) organization based in New York and a separate legal entity distinct from CUNY.[16]  RF CUNY "processed the I[nstitute]'s payroll; presided over the administration of the I[nstitute]'s budgets; implemented/enforced personnel decisions; and implemented/enforced complaint procedures that involved employees who worked for or provided services at the I[nstitute]."[17]  RF CUNY is the employer of record for Plaintiff and individual Defendants Batkin and Ralph.[18]  RF CUNY "dictated the terms and conditions" of individual Defendant Jacobs' employment and Jacobs acted as an agent of RF CUNY.[19]

Individual Defendant Ann Jacobs is a "Caucasian homosexual woman" without a record of conviction, and served as the Executive Director of the John Jay Institute during Plaintiff's

---

[13] *Id.* ¶ 15.

[14] *Id.* ¶¶ 16, 17.

[15] *Id.* ¶ 29.

[16] *Id.* ¶¶ 18-20.

[17] *Id.* ¶ 24.

[18] *Id.* ¶ 25.

[19] *Id.* ¶¶ 26-27.

employment.[20]  Jacobs was Plaintiff's supervisor throughout his term of employment from May 2019 to November 2021 with the "ability to hire, fire, promote and or demote P[laintiff]."[21]

Individual Defendant Susan Batkin is a "Caucasian cis-gendered/heterosexual woman" without a record of conviction, and worked as Deputy Director of Programs at the Institute.[22] Batkin was Plaintiff's supervisor from September 2019 to November 5, 2021 with the "ability to hire, fire, promote and or demote P[laintiff]."[23]  Batkin was directly supervised by Jacobs.[24]

Individual Defendant Katheryne Ralph is an "African American cis-gendered/heterosexual woman" without a record of conviction, and worked as the Director of Human Resources at the Institute.[25]  Ralph had the "ability to hire, fire, promote and or demote P[laintiff]" and reported directly to Jacobs.[26]

## II.    Refusal to Hire Claim

Plaintiff applied in March 2019 for the Director of Career Pathways position at the Institute and interviewed with Defendant Jacobs and Sasha Graham.[27]  Plaintiff had previously worked before for CUNY's College Initiative Program as an academic counselor from 2008 to 2011.[28]  Jacobs determined that Plaintiff was not qualified for the Director position and instead hired Drew Oldfield, a Caucasian heterosexual male with a high school diploma and a prior

---

[20] *Id.* ¶¶ 40, 45, 46.

[21] *Id.* ¶¶ 41, 43.

[22] *Id.* ¶¶ 32, 37, 38.

[23] *Id.* ¶¶ 33, 34.

[24] *Id.* ¶ 35.

[25] *Id.* ¶¶ 48, 55, 56.

[26] *Id.* ¶¶ 50-53.

[27] *Id.* ¶¶ 64-65.

[28] *Id.* ¶ 61.

conviction.[29]  Jacobs directed Plaintiff to the Mentoring and Alumni Coordinator position, which is less senior and paid "$25,000 less,"[30] presumably per year.  Jacobs ultimately hired Plaintiff for the Mentoring and Alumni Coordinator position, and Plaintiff worked in that title throughout his employment at the Institute from May 6, 2019 until November 24, 2021.[31]  Ralph conveyed to Plaintiff that Jacobs commented to Ralph that "[Plaintiff's] pants were too tight; [Plaintiff] was flamboyant; and that [Plaintiff] was rude and catty," and "these were the reasons that [Jacobs] did not initially hire him for the Director position."[32]  Plaintiff believes that "[a]s a homosexual woman, J[acobs] knew about the invidiously discriminatory connotations of the term flamboyant, and the stereotypical ascription of unprofessionalism associated with [Plaintiff]'s presentation."[33]

### III.    Failure to Promote Claim

Plaintiff worked under Carlos Quintana and Antonia Salerno until Quintana resigned in May 2021.[34]  As Mentoring and Alumni Coordinator, Plaintiff had the following responsibilities: "develop curriculum for peer mentor training; train, manage and coach professional development of peer mentors[;] leverage relationships with partners to drive program participation; create digital and media content for I[nstitute] platforms; form alumni network and community advisory boards; and represent the I[nstitute] at events throughout New York."[35]  Quintana encouraged Plaintiff to apply for a "Director position" again and believed that "Plaintiff was an

---

[29] *Id.* ¶¶ 67, 70, 71, 74.

[30] *Id.* ¶¶ 67-68.

[31] *Id.* ¶¶ 89-90.

[32] *Id.* ¶ 84.

[33] *Id.* ¶ 82.

[34] *Id.* ¶¶ 95, 97.

[35] *Id.* ¶ 94.

ideal fit for the position, based on [Plaintiff]'s performance, experience and commitment to the participants."[36]  When Plaintiff applied in May 2021 following Quintana's resignation, Jacobs would not interview Plaintiff.[37]  After Solerno and eventually Batkin resigned, Plaintiff continued to pursue a Director or other managerial position between June 2021 and November 2021.[38]  Defendants did not fill the Director position until Plaintiff left the Institute, during which time Plaintiff performed his own job functions along with those of Quintana and Salerno.[39]  Plaintiff performed the work of three people for at least four months without an increase in title or pay.[40]  After Plaintiff left the Institute, Jacobs and Ralph filled the position with an African American heteronormative-presenting male, who had less professional experience than Plaintiff and did not have a criminal record.[41]

Ralph conveyed to Plaintiff that Jacobs would not promote him for the same reasons that he was not initially hired, and also so that he would not "be her direct report in a Director/Managerial capacity."[42]  "At all times relevant, all of J[acobs'] direct reports presented in a heteronorm[ative] fashion and did not have records of prior convictions."[43]

## IV.    Hostile Work Environment Claim

Thirteen Black or Latino staff persons who have complained to Plaintiff, Jacobs, Batkin,

---

[36] *Id.* ¶¶ 97-98.

[37] *Id.* ¶ 99.

[38] *Id.* ¶¶ 100-101.

[39] *Id.* ¶¶ 184-186.

[40] *Id.* ¶ 179.

[41] *Id.* ¶¶ 88, 102.

[42] *Id.* ¶ 84

[43] *Id.* ¶ 87.  The Court notes that Jacobs hired Oldfield for the initial opening of the Director position when Plaintiff first applied in March 2019, and the Complaint alleges that Oldfield does have a criminal conviction.  Oldfield was terminated soon after his hiring and before Plaintiff started his position in May 2019.

or Ralph about a racially hostile work environment and/or discrimination have resigned, been terminated, or constructively discharged.[44]  Plaintiff and the thirteen former employees "had one of any number of the following complaints about the individually named Defendants: Defendants refused to consider or hire them for managerial positions; Defendants insisted on paying them lesser salaries; Defendants denied them the resources to perform their job functions; and Defendants demeaned them, used discriminatory language and openly discredited their work."[45] As HR director, Ralph did not report or investigate any of the thirteen former employees' discrimination claims.[46]  Nor did Ralph report or investigate Jacobs' comments regarding Plaintiff's sexual orientation.[47]

Batkin "frequently ignored, belittled and disrespected minority staff members."[48] Specifically, Batkin interrupted Plaintiff at meetings when he spoke, diminished Plaintiff's achievements amongst staff and management, and accused Plaintiff of failing to complete assignments that Plaintiff alleges he completed.[49]  "On more than one occasion, P[laintiff] heard Defendants make the comment that he and others with prior convictions ought to be glad they had jobs."[50]

## V.    Retaliation Claims

In June 2021, Plaintiff complained to Batkin "about her disparate treatment and

---

[44] *Id.* ¶¶ 106-107.

[45] *Id.* ¶ 111.

[46] *Id.* ¶ 108.

[47] *Id.* ¶¶ 85-86.

[48] *Id.* ¶ 122.

[49] *Id.* ¶ 123.

[50] *Id.* ¶ 125.  The Court notes that unlike other allegations, Plaintiff did not specify which individual Defendants made the comments.

microaggressions towards racial minorities and or employees with prior convictions at the Institute."[51]  Around the same time, Plaintiff had a dispute with Batkin regarding which subordinates to "write up."[52]  On or around July 15, 2021, Plaintiff submitted his work plan to Batkin, and Batkin responded "insinuat[ing] that [Plaintiff] had used sarcastic language to describe staff morale."[53]  Plaintiff resubmitted his work plan following Batkin's instructions on the tone on or around July 18, 2021, but Batkin "ignored" it.[54]

On or around August 23, 2021, Jacobs pressured staff to input inaccurate performance data into the Salesforce system to ensure more funding going forward.[55]  Between August 31, 2021, and September 2, 2021, Plaintiff reported his concerns about the veracity of data submitted to the District Attorney's Office of New York and pointed out the disparities between the number of participants actually served and the data entered into Salesforce.[56]  On or around September 2, 2021, Batkin "wrote an email where she stated that she consistently inflated the number of mentors to mentees, and that she padded the budget to [e]nsure more funding."[57]  Another staff member, Nakia Greene, accused Jacobs of demanding that staff record performance using Excel instead of Salesforce to avoid leaving a paper trail on Salesforce.[58]

---

[51] *Id.* ¶127.

[52] *Id.* ¶ 129.

[53] *Id.* ¶¶ 132-133.

[54] *Id.* ¶137.

[55] *Id.* ¶¶ 156, 158.

[56] *Id.* ¶¶157-158.

[57] *Id.* ¶ 160.

[58] *Id.* ¶ 206.

Plaintiff alleges that they have only provided services to approximately 150 clients, even though Jacobs, Batkin, and Ralph reported that they had provided services to 753 clients.[59]

On or around September 9, 2021, Plaintiff "approached Jacobs with the Voices of Change Initiative," to which Jacobs responded with "feigned enthusiasm."[60] Batkin accused Plaintiff of proceeding without a budget and inappropriately soliciting other units for funds, "even though Jacobs initially approved" the Initiative.[61]

On September 17, 2021, Plaintiff complained of discrimination in an email and noted that "had he been a 57 year old white male or female, he would have been promoted by BATKIN and JACOBS based on his credential, job experience and the additional responsibilities he had performed."[62] Besides HR Director Ralph, all other direct reports under Batkin and Jacobs during the relevant time were white.[63] None of the direct reports under Batkin or Jacobs had prior convictions.[64] In the same email, Plaintiff pointed out that the Institute lost five employees of color under Batkin's supervision in the past year.[65] Plaintiff concluded the email stating that he sought mediation with Batkin and that he sought to file a discrimination complaint with Ralph or RF CUNY.[66] Plaintiff sought discrimination complaint forms from Ralph.[67] Within days of the September 17th Complaint, Batkin removed the staff persons under Plaintiff's supervision

---

[59] *Id.* ¶ 208.

[60] *Id.* ¶ 161-162.

[61] *Id.* ¶¶ 164-165.

[62] *Id.* ¶ 167.

[63] *Id.* ¶ 168.

[64] *Id.*

[65] *Id.* ¶ 169.

[66] *Id.*

[67] *Id.* ¶ 170.

and removed the counseling function from Plaintiff's job.[68]  Batkin justified these decisions based on Plaintiff's failure to provide her with his work plan and his poor job follow-through.[69] Plaintiff alleges that he submitted his work plan on time and that Jacobs and Batkin continued to increase his workload until he complained of discrimination.[70]  Plaintiff later followed up with Ralph and RF CUNY about his complaint, but RF CUNY Labor and Employment Relations stated that they had not received his complaint and Ralph stated that it is not the policy of the Institute or RF CUNY to further investigate the complaint since Batkin's last day was November 1, 2021.[71]

Plaintiff then filed a complaint with the State Division of Human Rights.[72]  On or around November 18, 2021, Plaintiff continued to complain about discrimination, and Jacobs scheduled a meeting with him.[73]  Jacobs missed the meeting and blamed Plaintiff via email.[74]  On November 24, 2021, Jacobs met with Plaintiff.[75]  At the meeting, Plaintiff complained again of discrimination and false reporting, and Jacobs demanded that Plaintiff hand in his letter of resignation by close of business that day.[76]  When Plaintiff tendered his resignation as requested on November 24, 2021, both Jacobs and Ralph told him that his discrimination complaints had not been investigated.[77]

---

[68] *Id.* ¶¶ 171-173.

[69] *Id.* ¶¶ 174-75.

[70] *Id.* ¶ 175.

[71] *Id.* ¶¶ 187-189.

[72] *Id.* ¶ 190.

[73] *Id.* ¶ 197.

[74] *Id.* ¶ 198.

[75] *Id.* ¶ 199.

[76] *Id.* ¶¶ 200-201.

[77] *Id.* ¶ 210.

By the time Jacobs left the Institute on or around December 14, 2022, at least 95% of the 43 staff members employed by CUNY/ RF CUNY had resigned or were terminated by Jacobs in the span of 18 months.[78]  At least 70 percent of the staff that left were Black and/or Latino.[79] For example, Jacobs and Ralph fired a Black staff member when the staff member made repeated attempts to seek a higher position, even though Jacobs and Ralph praised the employee's performance before the vacancy and did not criticize the employee's performance when firing her.[80]

## VI.    Procedural History

Plaintiff filed suit against his former employers on February 24, 2023.[81]  On August 15, 2023, Plaintiff filed his First Amended Complaint, the operative pleading in this suit.[82]  On September 19, 2023, Defendants separately filed three motions to dismiss now before the Court.[83]  On September 20, 2023, Plaintiff sought and was granted a 22-day extension to oppose the motions (i.e., until October 25).[84]  On October 11, 2023, the case was reassigned to the undersigned.[85]  On October 20, 2023, Plaintiff sought a second extension, this time until November 10, 2023, which the Court also granted.[86]  On November 8, 2023, Plaintiff's counsel

---

[78] *Id.* ¶¶ 202, 211.

[79] *Id.* ¶ 203.

[80] *Id.* ¶¶ 192-194.

[81] *See* ECF No. 4.

[82] *See generally* FAC.

[83] John Jay Institute for Justice and Opportunity/City University of New York and Research Consortium of John Jay filed motion to dismiss, *see* ECF No. 61.  Defendant Ann Jacobs filed motion to dismiss, *see* ECF No. 64.  Defendant Susan Batkin, Katheryne Ralph, and RF CUNY filed motion to dismiss, *see* ECF No. 66.

[84] *See* ECF No. 73.

[85] *See* Oct. 11, 2023, Min. Entry.

[86] *See* ECF Nos. 75, 77.

notified the Court that Plaintiff was in the process of retaining new counsel, and requested an additional 90 days to oppose the motions to dismiss, which the Court granted in part, giving Plaintiff an additional 60 days (or until January 8, 2024) to oppose the motions to dismiss.[87] Plaintiff was apprised that "no further extensions [would] be granted."[88]  Ultimately, Plaintiff did not retain new counsel, and did not file a response brief by January 8, 2024.[89]  The Court deemed the motions fully briefed on January 10, 2024.[90]  On January 12, 2024, the Court granted Plaintiff's counsel's motion to withdraw.[91]

## LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[92]  The Court accepts "all [non-conclusory] factual allegations as true, and draw[s] all reasonable inferences in the plaintiff's favor."[93]  "In assessing the complaint, [a court] must construe it liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor."[94]  However, a court must disregard any "conclusory allegations, such as 'formulaic recitations of the elements of a cause of action.'"[95]

---

[87] *See* ECF Nos. 78, 79.

[88] *See* ECF No. 79.

[89] *See* ECF No. 80.

[90] *Id.*

[91] *See* ECF No. 82.

[92] *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[93] *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021).

[94] *Sacerdote*, 9 F.4th at 106-07.

[95] *Id.* at 107 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor.[96]  A complaint need not make "detailed factual allegations," but it must contain more than "a formulaic recitation of the elements of a cause of action."[97]  While all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions."[98]

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."[99]  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."[100]

Moreover, "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings *drafted by lawyers*."[101]  Here, Plaintiff's then-counsel drafted and filed Plaintiff's First Amended Complaint, but Plaintiff is now proceeding *pro se*.[102]  Because a lawyer "drafted" the "formal pleadings" in this matter, it does not have "to be liberally construed."[103]  Nevertheless, out of an abundance of caution due to Plaintiff's now *pro se* status, the Court still liberally construes the pleadings[104] and interprets them to raise the "strongest [claims] that they *suggest*."[105]  Even so, a

---

[96] *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).

[97] *Iqbal*, 556 U.S. at 678.

[98] *Id.*

[99] *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

[100] *Id.*

[101] *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (emphasis added).

[102] *See* ECF No. 82.

[103] *Boykin v. KeyCorp*, 521 F.3d at 214.

[104] *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

[105] *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis in original).

court must dismiss a complaint that does not plead sufficient facts "to state a claim to relief that is plausible on its face."[106]  To state a claim, a plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully"[107] and cannot rely on mere "labels and conclusions" to support a claim.[108]  In other words, "the Court's duty to liberally construe a [*pro se*] plaintiff's complaint is not the equivalent of a duty to re-write it."[109]  If a *pro se* plaintiff has not pled sufficient facts to state a claim that is plausible on its face, a court must dismiss his complaint.[110]

## DISCUSSION

Plaintiff brings claims of racial and sexual orientation discrimination under Title VII, Section 1981, and various state and city law provisions.  The Court considers each in turn below.

### I.    Timeliness of Refusal to Hire Claim

As a threshold matter, the Court considers CUNY's argument that Plaintiff's refusal to hire allegations are time-barred under Title VII.[111]  It is well-established that under Title VII, plaintiffs must file a complaint with the EEOC or New York State Division of Human Rights within 300 days of the alleged discriminatory act.[112]  CUNY contends that the refusal to hire claim is time-barred because Plaintiff did not file "any administrative charge or claim within 300

---

[106] *Twombly*, 550 U.S. at 570.

[107] *Iqbal*, 556 U.S. at 678.

[108] *Twombly*, 550 U.S. at 555.

[109] *Thomas v. N.Y.C. Dep't of Educ.*, No. 15 Civ. 8934, 2016 WL 4544066, at *2 (S.D.N.Y. Aug. 31, 2016).

[110] *See Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011).

[111] CUNY Mem. in Support of Mot. to Dismiss ("CUNY Mem.") 14-15, ECF No. 62.  Plaintiff does not seek redress for refusal to hire claim under other statutes, *see* FAC ¶¶ 213-223. Accordingly, the Court cabins its timeliness analysis to Title VII.

[112] *See* 42 U.S.C. § 2000e-5(e)(1); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002); *Cetina v. Longworth*, 583 F. App'x 1, 2 (2d Cir. 2014).

days of the alleged 2019 refusal to hire."[113]  Here, Plaintiff filed two administrative claims on

November 23, 2021, and June 22, 2022, both dates that are well beyond the 300-day window.[114]

Plaintiff's refusal to hire claim is therefore untimely.  Accordingly, the Court dismisses

Plaintiff's Title VII refusal to hire claim as to all Defendants.

## II.    Discrimination Claims

### A.    Title VII and Section 1981[115]

Title VII "prohibits employment discrimination on the basis of race, color, religion, sex

[including sexual orientation],[116] or national origin."[117]  Section 1981 prohibits discrimination

"on account of [a person's] race, ancestry, or ethnic characteristics," but not sexual orientation or

criminal history.[118]  While Plaintiff alleges discrimination on the basis of criminal history, Title

VII "do[es] not protect against employment discrimination based upon a prior conviction."[119]

Where, as here, the plaintiff does not purport to present "direct evidence of

discrimination" but instead relies on circumstantial evidence of intent, his complaint must

instead "be plausibly supported by facts alleged in the complaint [] that the plaintiff is a member

---

[113] CUNY Mem. 14.

[114] *See* Lawson Decl., ECF Nos. 55-1, 55-2.

[115] Courts apply the same standards in Title VII cases as in cases brought under 42 U.S.C. § 1981.  *See Whidbee v. Garzarelli Food Specialties, Inc*., 223 F.3d 62, 69 (2d Cir. 2000); *Cadet v. All. Nursing Staffing of N. Y., Inc*., 632 F. Supp. 3d 202, 222 (S.D.N.Y. 2022) ("Hostile work environment, disparate treatment, and retaliation claims are analyzed in the same manner and under the same tests under both Title VII and Section 1981.").  Accordingly, throughout its analysis of Plaintiff's federal claims, the Court cites both Title VII and Section 1981 caselaw.

[116] A person's sexual orientation is a protected characteristic under Title VII, since it falls within the protected characteristic of a person's sex.  *See Bostock v. Clayton Cnty.,* 590 U.S. 644 (2020).

[117] *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009).

[118] *Zemsky v. City of New York*, 821 F.2d 148, 150 (2d Cir. 1987).

[119] *See McClarence v. Int'l Union of Operating Engineers Loc. Union*, No. 16 Civ. 6614, 2017 WL 3887883, at *2 (E.D.N.Y. Sept. 5, 2017).

of a protected class, was qualified, suffered an adverse employment action, and has at least

minimal support for the proposition that the employer was motivated by discriminatory

intent."[120]   "Generally speaking, a plaintiff's burden of establishing a prima facie case in the

context of employment discrimination law is minimal."[121]

The Court considers each of Plaintiff's discrimination claims based on his race and

sexual orientation under Title VII, Section 1981, NYSHRL and NYCHRL, as follows: first, the

Court considers his failure to promote claims, and then his hostile work environment claims.

### 1.    Failure to Promote Claim

#### a.    *Legal Standards*

For a plaintiff to establish a claim for failure to promote under Title VII,[122] he must

demonstrate that "(1) [he] is a member of a protected class; (2) [he] applied and was qualified for

a job for which the employer was seeking applicants; (3) [he] was rejected for the position; and

(4) the position remained open and the employer continued to seek applicants having the

plaintiff's qualifications."[123]   Under the second prong, "the plaintiff must allege that she or he

applied for a specific position or positions and was rejected therefrom, rather than merely

asserting that on several occasions she or he generally requested promotion,"[124] *or* that "(1) the

vacancy at issue was not posted, and (2) the employee either had (a) no knowledge of the

vacancy before it was filled or (b) attempted to apply for it through informal procedures

---

[120] *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).

[121] *Collins v. N.Y.C. Transit Auth.*, 305 F.3d 113, 118 (2d Cir. 2002).

[122] To state a claim for a failure to promote claim under NYSHRL and NYCHRL, the caselaw mirrors that under Title VII.

[123] *Petrosino v. Bell Atl.*, 385 F.3d 210, 226 (2d Cir. 2004); *accord Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998).

[124] *Clarke v. Leading Hotels of the World, Ltd.*, No. 15 Civ. 8, 2015 WL 6686568, at *3 (S.D.N.Y. Oct. 29, 2015) (quoting *Brown*, 163 F.3d at 710).

endorsed by the employer."[125]  This latter exception is narrow because this application

requirement "protects employers from the unfair burden of having to keep track of all employees

who have generally expressed an interest in promotion and to consider each of them for any

opening."[126]  The Complaint must also contain "a description of the responsibilities or duties" of

the position "from which one could infer that the plaintiff was qualified for that position."[127]

### b.    Application

The parties do not dispute that Plaintiff is a member of a protected class.[128]  CUNY

contests the second element, arguing that Plaintiff does not specify "<u>which</u> precise position(s) he

supposedly applied for—or whether he submitted any purported 'application' at all," and does

not allege that he was qualified.[129]  Defendants also argue that Plaintiff does not adequate allege

facts to give rise to an inference of discrimination.[130]

**Plaintiff's qualifications.**  Plaintiff does not clearly state which specific position(s) he

applied for in May 2021.  He states that he "applied for the Director position again,"[131] and that

he continued to pursue the "Director/managerial positions,"[132] "either informally or formally,"

between June 2021 and November 2021.[133]  But it is unclear from the face of the FAC which

position(s) Plaintiff is referencing.  Plaintiff's alleges that he applied "again" for a position,

---

[125] *Petrosino*, 385 F.3d at 226-27.

[126] *Id.* at 227.

[127] *Mendelsohn v. Univ. Hosp.*, 178 F. Supp. 2d 323, 328-29 (2d Cir. 2002).

[128] *See* FAC ¶ 6.

[129] CUNY Mem. 15 (emphasis in original).

[130] *Id.* at 17-20; *see also* Jacobs' Mem. in Support of Mot. to Dismiss ("Jacobs' Mem.") 20-22, ECF No. 65.

[131] FAC ¶ 97.

[132] *Id.* ¶ 101.

[133] *Id.* ¶¶ 100-101.

which suggests that he applied for the "Director of Career Pathways" position—a role for which he had applied previously in March 2019.[134]  But as to his qualifications, the FAC does not set forth the qualifications expected of a "Director of Career Pathways" position, and it is therefore impossible to tell if Plaintiff was qualified for it.  Plaintiff alleges that he received positive feedback from his outgoing supervisor Quintana, who advised him that he was "an ideal fit for [Quintana's former] position, based on [Plaintiff's] performance, experience and commitment to the participants."[135]  But Quintana held a *different* position; he did not hold the Director of Career Pathways position, which according to the FAC, was held by someone else, Drew Oldfield.[136]  And the FAC is ambiguous as to whether Plaintiff actually applied for Quintana's position, stating confusingly that he "continued to apply for and or express interest in in the Director/Managerial position vacated by Quintana, Salerno and eventually Batkin."[137]  Accordingly, he has not adequately pled that he applied for a position for which he was qualified.[138]

**Inference of Discrimination.**  Even if Plaintiff had adequately alleged that he applied for a position for which he was qualified, his race discrimination claim would still fail because he

---

[134] *Id.* ¶ 64-65.

[135] *Id.* ¶ 98.

[136] *Id.* ¶ 70.

[137] *Id.* ¶ 100.

[138] *See, e.g.*, *Grimes v. Sil*, No. 19 Civ. 1066, 2020 WL 1516459, at *7 (E.D.N.Y. Mar. 29, 2020) (dismissing Title VII failure to promote claim where the plaintiff did not "state what the position was, or the responsibilities and duties it entailed"); *Brown v. Montefiore Med. Ctr.*, No. 18 Civ. 3861, 2019 WL 4454230, at *6 (S.D.N.Y. May 8, 2019), *report and recommendation adopted*, No. 18 Civ. 3861, 2019 WL 3282927 (S.D.N.Y. July 22, 2019) (dismissing Title VII failure to promote claim where, among other things, the plaintiff did "not identify the job title of the position or the job criteria").

has not met the initial burden of alleging facts that "together give rise to an inference of discrimination."[139]

Plaintiff alleges that he was told by Ralph that Jacobs "would not promote him so that he would be her direct report in a Director/Managerial capacity," citing the same reasons that, purportedly, had initially led Jacobs to decline to hire him—namely, that "[Plaintiff's] pants were too tight; [Plaintiff] was flamboyant; and that [Plaintiff] was rude and catty."[140]  Plaintiff also notes that "[a]t all times relevant, all of [Jacobs'] direct reports presented in a heteronorma[tive] fashion."[141]  Notably, after Plaintiff left his job, the "Director" position was filled with "an African American heteronorma[tive-]presenting male, who had less professional experience than [Plaintiff]."[142]

None of these allegations go to race, as Plaintiff offers no factual allegations, circumstantial or otherwise, to suggest that he was not promoted on the basis of race. Accordingly, Plaintiff has not alleged sufficient facts with respect to his claim that he was not promoted due to racial discrimination.

His failure to promote claim with respect to sexual orientation is a closer call, as Plaintiff presents at least some allegations that arguably relate to sexual orientation, including statements from Ralph about what were purportedly Jacobs' reasons for not promoting Plaintiff.  As Plaintiff notes, however, Jacobs identifies as a gay woman,[143] and "[w]hen the person who allegedly discriminated against plaintiff is a member of the same protected class as plaintiff, the

---

[139] *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015).

[140] FAC ¶ 84.

[141] *Id.* ¶ 87.

[142] *Id.* ¶¶ 88, 102.

[143] *Id.* ¶¶ 45, 82.

court applies an inference against discrimination."[144]  Ultimately, the Court need not resolve this issue conclusively, as Plaintiff's failure to promote claim fails based on his failure to adequately allege that he was qualified for a position to which he applied.

### 2.    Hostile Work Environment Claim

Plaintiff brings hostile work environment claims under federal, state, and city statutes. For the reasons discussed below, these claims are also dismissed.

### a.    *Legal Standards*

For a plaintiff to state a hostile work environment claim under Title VII, a plaintiff must allege facts demonstrating that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[145]  To do so, a plaintiff must plead "both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive."[146]  A court "must consider the totality of the circumstances,"[147] including, "[1] the frequency of the discriminatory conduct; [2] its severity; [3] whether it is physically threatening or humiliating, or a mere offensive utterance;

---

[144] *Meyer v. McDonald*, 241 F. Supp. 3d 379, 390-91 (E.D.N.Y. 2017), *aff'd sub nom. Meyer v. Shulkin*, 722 F. App'x 26 (2d Cir. 2018).

[145] *Rivera v. Rochester Genesee Regional Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014).

[146] *Isbell v. City of New York*, 316 F. Supp. 3d 571, 591 (S.D.N.Y. 2018) (citing *Littlejohn*, 795 F.3d at 321).

[147] *Littlejohn*, 795 F.3d at 321.

and [4] whether it unreasonably interferes with an employee's work performance."[148] "Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness."[149]

NYSHRL was amended in 2019, and its standard is now "closer to" the NYCHRL standard.[150] "To make out a hostile work environment claim under NYCHRL, a plaintiff need not allege 'either materially adverse employment actions or severe and pervasive conduct.'"[151] "Rather, a plaintiff must show only unequal treatment based upon membership in a protected class."[152] Because the NYCHRL is not a "general civility code," Plaintiff must allege facts from which the Court can plausibly infer that the unwanted conduct was caused by a discriminatory animus.[153] A discriminatory motive can be shown by pleading direct evidence of discrimination, including "comments indicating prejudice on account of a protected characteristic."[154] Comments that a reasonable person would view as only "petty slights and trivial inconveniences" do not give rise to an inference of discriminatory motive.[155]

      *b.*      *Application*

Applying these standards here, the Court determines Plaintiff has failed to adequately plead a hostile work environment claim under any applicable statute.

---

[148] *Doyle v. Am. Glory Rest. Corp.*, No. 23 Civ. 7624, 2024 WL 1466161, at *5 (S.D.N.Y. Apr. 4, 2024).

[149] *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002).

[150] *Wheeler v. Praxair Surface Techs., Inc.*, 694 F. Supp. 3d 432, 451 (S.D.N.Y. 2023).

[151] *Bautista v. PR Gramercy Square Condo.*, 642 F. Supp. 3d 411, 427 (S.D.N.Y. 2022) (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 114 (2d Cir. 2013)).

[152] *Id.*

[153] *Rothbein v. City of New York*, No. 18 Civ. 5106, 2019 WL 977878, at *9 (S.D.N.Y. Feb. 28, 2019) (quoting *Mihalik*, 715 F.3d at 110).

[154] *Bautista.*, 642 F. Supp. 3d at 428.

[155] *See Mihalik*, 715 F.3d at 111.

As noted, Plaintiff alleges that he heard from Ralph that Jacobs said that "[Plaintiff's] pants were too tight; [Plaintiff] was flamboyant; and that [Plaintiff] was rude and catty."[156] Plaintiff further alleges Batkin would "often belittle and engage in tone policing," "interrupt [Plaintiff] at meetings," diminish Plaintiff's achievements amongst staff and management, and accused Plaintiff of failing to complete assignments that Plaintiff alleged he completed.[157]  These allegations are relatively slim.  The allegations about Batkin, while perhaps indicating rudeness or hostility, do not suggest that Batkin's conduct was *because of* Plaintiff's race or sexual orientation.  And as for the allegations about what Ralph stated about Jacobs' views, Plaintiff does not allege that he heard Jacobs' alleged comments first-hand.[158]

Ultimately, even liberally construing Plaintiff's pleadings, the Court concludes that the remarks he complains about amount to, at most, "petty slights and trivial inconveniences," which do not amount to an actionable hostile work environment under the various laws at issue here.[159] Certainly, "[n]o reasonable juror could find that [Plaintiff] was subjected to conduct that was sufficiently severe or pervasive, either in isolation or when viewed as a whole, to create a hostile work environment" under Title VII.[160]  While Jacobs' comments are plausibly related to Plaintiff's sexual orientation, a "stray remark[] of a decision-maker, without more, cannot prove

---

[156] FAC ¶ 84.

[157] *Id.* ¶¶ 120-123.

[158] *See, e.g, Gerzhgorin v. Selfhelp Cmty. Servs., Inc.*, No. 18 Civ. 4344, 2022 WL 912523, at *5 (E.D.N.Y. Mar. 29, 2022), *aff'd*, No. 22 Civ. 808, 2023 WL 2469824 (2d Cir. Mar. 13, 2023) (holding "an employee cannot prevail on a hostile work environment claim that is premised on conduct the employee did not himself witness"); *Sletten v. LiquidHub, Inc.*, No. 13 Civ. 1146, 2014 WL 3388866, at *7 (S.D.N.Y. July 11, 2014) (noting that secondhand statements "are not as impactful on one's environment as are direct statements; consequently, they are less persuasive in stating a hostile work environment claim").

[159] *Russo v. New York Presbyterian Hosp.*, 972 F. Supp. 2d 429, 450 (E.D.N.Y. 2013).

[160] *Davis-Molinia v. Port Auth. of N. Y. & N. J.*, No. 08 Civ. 7584, 2011 WL 4000997, at *11 (S.D.N.Y. Aug. 19, 2011), *aff'd*, 488 F. App'x 530 (2d Cir. 2012).

a claim of employment discrimination."[161]  The Second Circuit has made clear that far more

severe conduct falls short of stating a hostile work environment claim under Title VII.[162]  The

general rule is that the hostile incidents "must be more than episodic; they must be sufficiently

continuous and concerted in order to be deemed pervasive."[163]  Here, Plaintiff has not adequately

alleged that he was subject to either "sufficiently severe or pervasive" conduct to create a hostile

work environment.[164]  Accordingly, Plaintiff fails to allege a hostile work environment claim.

### III.    Retaliation Claims

The Court now turns to Plaintiff's retaliation claims under three separate theories: (1)

retaliatory hostile work environment, (2) retaliatory workload changes, and (3) retaliatory

constructive discharge.  For the reasons discussed below, the Court dismisses Plaintiff's

retaliation claims.

### A.  Legal Standards

To plausibly allege a retaliation claim under Title VII,[165] "a plaintiff must show: (i) he

engaged in protected activity; (ii) the defendant was aware of that activity; (iii) [plaintiff]

---

[161] *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001).

[162] *See, e.g., Fleming v. MaxMara USA, Inc*., 371 F. App'x 115, 119 (2d Cir. 2010) (holding allegations that the plaintiff was wrongly excluded from meetings, excessively criticized, had duties arbitrarily imposed outside her normal responsibilities, had books thrown at her, and received rude emails did not establish hostile work environment); *Littlejohn*, 795 F.3d at 321 (holding allegations that coworkers and supervisors made negative statements about the plaintiff, used harsh tones, declined to meet with the plaintiff, replaced the plaintiff at meetings, wrongfully reprimanded the plaintiff, and increased the plaintiff's schedule did not state a hostile work environment claim); *Garcia v. N.Y.C. Health & Hosps. Corp.*, No. 19 Civ. 997, 2019 WL 6878729, at *7 (S.D.N.Y. Dec. 17, 2019) (holding that allegations where a plaintiff's supervisor referred to him as a "faggot" in another language, yelled, and was aggressive towards the plaintiff were insufficient to state a Title VII claim).

[163] *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002).

[164] *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21 (1993).

[165] Retaliation claims under NYSHRL and NYCHRL statutes are governed by the Title VII framework, with a few differences discussed below.  *See Hicks v. Baines*, 593 F.3d 159, 164 (2d

suffered a[n] . . . adverse [employment] action; and (iv) there was a causal connection between the protected activity and that adverse action."[166]  "[F]or an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action.  If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to "articulate a legitimate, non-retaliatory reason for the challenged employment action."[167]  If the defendant does so, a plaintiff must then demonstrate that the proffered reason "is merely a pretext for impermissible retaliation,"[168] by showing "that the desire to retaliate was the but-for cause of the challenged employment action."[169]  But-for causation requires "that the adverse action would not have occurred in the absence of the retaliatory motive" and may "be shown by direct evidence of retaliatory animus or inferred through temporal proximity to the protected activity."[170]  It is not enough that retaliation was a 'substantial' or 'motivating' factor in the employer's decision."[171]  Informal complaints to managers will only qualify as "protected activit[ies]" within this definition where the complaints are "sufficiently specific to make it clear that the employee is complaining about conduct prohibited by Title VII."[172]  An adverse employment action is an action that is "harmful to the

---

Cir. 2010) (Title VII, Section 1981, NYSHRL); *Mooney v. City of New York*, No. 18 Civ. 328, 2019 WL 4392961, at *7 (S.D.N.Y. Sept. 13, 2019) (Title VII and NYSHRL); *Schaper v. Bronx Lebanon Hospital Center*, 408 F. Supp. 3d 379, 394 (S.D.N.Y. 2019) (NYCHRL); *Craven v. City of New York*, No. 19 Civ. 1486, 2020 WL 2765694, at *6 (S.D.N.Y. May 28, 2020) (NYCHRL).

[166] *Livingston v. City of New York*, 563 F. Supp. 3d 201, 245 (S.D.N.Y. 2021).

[167] *Frantti v. New York*, 850 F. App'x 17, 21 (2d Cir. 2021).

[168] *Id.*

[169] *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 70 (2d Cir. 2015).

[170] *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018).

[171] *See Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d. 72, 90-91 (2d Cir. 2015).

[172] *Risco v. McHugh*, 868 F. Supp. 2d 75, 110 (S.D.N.Y. 2012).

point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination."[173]

Retaliation claims brought under the NYCHRL, however, need not allege a formal "adverse employment action."[174]  Rather, an employee need only allege that her employer engaged in conduct that was "reasonably likely to deter a person from engaging in protected activity."[175]  The NYSHRL bars employers from "retaliat[ing] or discriminat[ing] against any person because he or she has opposed any practices forbidden [by the NYSHRL]."[176]  Even under the state and city provisions' broad standards, however, a plaintiff alleging retaliation "still must establish that there was a causal connection between [her] protected activity and the employer's subsequent action."[177]

### B.  Application

Here, Plaintiff alleges three forms of retaliation following his informal complaints about discrimination.  First, Plaintiff says "Defendants created a retaliatory hostile work environment" for him "and other employees who engaged in protected activities."[178]  Second, following his September 17th Complaint, Batkin changes Plaintiff's workload, including by removing several of Plaintiff's duties, including his "counseling function."[179]  Finally, Plaintiff states that he was

---

[173] *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 209 (2d Cir. 2006); *accord Banks v. Gen. Motors, LLC*, 81 F.4th 242, 275 (2d Cir. 2023) (same).

[174] *See Mayers v. Emigrant Bancorp, Inc.*, 796 F. Supp. 2d 434, 446 (S.D.N.Y. 2011).

[175] *See Maynard v. Montefiore Med. Ctr.*, No. 18 Civ. 8877, 2021 WL 396700, at *6 (S.D.N.Y. Feb. 4, 2021) (NYCHRL).

[176] N.Y. Exec. L. § 296(7).

[177] *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 449 (S.D.N.Y. 2018) (NYCHRL).

[178] FAC ¶ 218.

[179] *Id.* ¶¶ 171-172.

constructively discharged in November 2021 following his discrimination complaints.[180]  For the reasons stated below, the Court determines that Plaintiff has failed to establish retaliation and dismisses these claims.

### 1.    **Retaliatory Hostile Work Environment Claim**

#### a.    *Legal Standards*

To adequately plead a retaliatory hostile work environment claim, the elements are substantially similar to those for a hostile work environment claim, *see supra*. But, for the purposes of establishing an adverse action, the Court need not "consider whether the allegedly retaliatory actions meet the higher 'severe and pervasive' standard."[181]  When considering the third prong of retaliation, "[a]ll that is relevant is whether the actions, taken in the aggregate, are materially adverse and would dissuade a reasonable employee from making a complaint of discrimination."[182]

#### b.    *Application*

Plaintiff fails to allege a causal connection between his complaints about discrimination and the allegedly retaliatory hostile work environment.  To establish a causal connection between the protected activity and the hostile work environment, "some increase in the discrimination or harassment—either a 'ratcheting up' of the preexisting behavior, or new, additional forms of harassment—must occur for the employee to make out a viable retaliation claim."[183]  "If, however, the discrimination was just as bad before the employee complained as it was afterwards, then the employee's complaints cannot be said to have led to that discriminatory

---

[180] *Id.* ¶ 209.

[181] *Carr v. N.Y.C. Transit Auth.*, 76 F.4th 172, 181 (2d Cir. 2023).

[182] *Id.*

[183] *Hall v. N.Y.C. Dep't of Transp.*, 701 F. Supp. 2d 318, 339 (E.D.N.Y. 2010).

behavior."[184]  Here, Plaintiff alleges there was a hostile work environment as early as 2019,[185] but he did not make his complaint until 2021.  And he does not allege that the purportedly hostile work environment that he endured *increased* in severity as a result of his complaints.  There are no facts alleged suggesting a causal connection between his environment and his complaints of discrimination.  Accordingly, Plaintiff's retaliatory hostile work environment claim is dismissed.

## 2.    Retaliatory Workload Changes

Plaintiff also states he was retaliated against following his September 17th Complaint via two sets of workload changes—a decrease in the range of responsibilities he had, and an increase in total workload.  First, Plaintiff alleges that after his complaint, "B[atkin] removed the counseling function" from his job.[186]  While the Second Circuit has held that "significantly diminished material responsibilities" may signify an adverse employment action,[187] a "decrease in workload, without any formal demotion or reduction in pay, does not constitute an actionable adverse employment action."[188]  Because Plaintiff does not allege that he was demoted or that his pay was reduced, the reduction in the scope of his work, without more, does not constitute an adverse employment action.

At the same time, Plaintiff alleges that Batkin "removed the staff persons [Plaintiff] was assigned upon the departures of Quintana and Salerno,"[189] causing an overall increase in the size of Plaintiff's workload.  While the Second Circuit has held that a disproportionate allocation of

---

[184] *Id.*

[185] FAC ¶¶ 103-126.

[186] *Id.* ¶¶ 171-172.

[187] *Vega*, 801 F.3d at 85.

[188] *Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 248 (S.D.N.Y. 2001), *aff'd in part, appeal dismissed in part*, 51 F. App'x 55 (2d Cir. 2002).

[189] FAC ¶ 172.

work can be an adverse employment action,[190] Plaintiff's own allegations establish that his initial workload increases coincided with the departure of two colleagues, Quintana and Salerno, and did not occur in response to his discrimination complaint.  He has, therefore, failed to allege facts showing a causal connection between his complaint and his workload increase.

### 3. Constructive Discharge Claim as Retaliation

#### a. Legal Standards

Finally, the Court turns to Plaintiff's constructive discharge claims under federal, state and city statutes.[191]  While New York state courts have not determined the precise standard for constructive discharge under the NYCHRL, they often address constructive discharge claims using language that "mirrors the federal standard."[192]  Under Title VII, a constructive discharge "occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit voluntarily."[193]  A plaintiff must allege that his "workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create

---

[190] *See Vega*, 801 F.3d at 88 (holding that the plaintiff suffered an adverse employment action when he received a disproportionately heavier workload than colleagues who were similarly situated).

[191] Constructive discharge under Section 1981, NYSHRL, and NYCHRL statutes mirrors the Title VII framework.  *See Spires v. Metlife Grp., Inc.*, No. 18 Civ. 4464, 2019 WL 4464393, at *9 (S.D.N.Y. Sept. 18, 2019) (collecting cases).

[192] *Tulino v. City of New York*, 813 Fed. App'x 725, 727 n.2 (2d Cir. 2020); *see also Blackman v. Metro. Transit Auth.*, 169 N.Y.S.3d 653, 656 (2022) (disposing of a NYCHRL constructive discharge claim mirroring the federal standard, stating that "[a]n employee is constructively discharged when her or his employer, rather than discharging the plaintiff directly, deliberately created working conditions so intolerable that a reasonable person in the plaintiff's position would have felt compelled to resign").

[193] *Serricchio v. Wachovia Sec. LLC*, 658 F.3d 169, 185 (2d Cir. 2011).

an abusive working environment."[194]  For a plaintiff to properly allege a constructive discharge

claim, they must allege that the defendants "*intentionally* or *deliberately* created negative

working conditions . . . so as to compel [the plaintiff] to resign."[195]

### b.    Application

The standard for pleading a constructive discharge claim "is higher than the standard for

establishing a hostile work environment" claim under Title VII.[196]  Since Plaintiff has not

pleaded sufficient facts to establish the existence of a hostile work environment, his constructive

discharge claims also fail.[197]  Plaintiff has failed to provide sufficient evidence to meet the

constructive discharge claim under any standard, as these claims are governed by a "stricter

standard" than those for hostile work environment claims.[198]  The Court therefore dismisses

Plaintiff's constructive discharge claims as to all Defendants.

## IV.    False Claims Act

Plaintiff also brings retaliation claims under the Federal FCA and analogous state

NYCFA, which prohibit false claims against government funds.[199]

### A.    Legal Standards

The federal and state FCAs allow relators to bring suit on behalf of the government

against parties who knowingly defraud the government.[200]  Because the NYFCA was modeled

---

[194] *Volpe v. N.Y.C. Dep't of Educ.*, 195 F. Supp. 3d 582, 595 (S.D.N.Y. 2016) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

[195] *Spires*, 2019 WL 4464393, at *10 (emphasis in original).

[196] *Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712, 725 (2d Cir. 2010).

[197] *Id.* (reasoning that because the plaintiff did not establish a hostile work environment, "her claim of constructive discharge also fails").

[198] *La Porta v. Alacra, Inc.*, 38 N.Y.S.3d 20, 22 (2016).

[199] *See* 31 U.S.C. § 3729; *see also* N.Y. State Fin. Law § 189.

[200] *See* 31 U.S.C. § 3730(b)(1) ("A person may bring a civil action for a violation of section 3729 for the person and for the United States Government.  The action shall be brought in the name of

on the federal FCA, courts regularly rely on federal law when interpreting the NYFCA.[201]  To

state a claim for retaliation under the FCA and NYFCA, a plaintiff must demonstrate that "(1) he

engaged in activity protected under the statute, (2) the employer was aware of such activity, and

(3) the employer took adverse action against him because he engaged in the protected

activity."[202]

### B.    Application

Plaintiff's FCA and NYFCA fail as a matter of law for two reasons.  First, they are barred

under the Eleventh Amendment.  Second, Plaintiff does not allege he engaged in protected

activity and was subjected to an adverse employment action as a result.

First, the Eleventh Amendment bars the FCA claims against defendants.  CUNY is

considered an "arm of the state," which means that "suits against CUNY are equivalent to suits

against the State of New York and are therefore barred by the Eleventh Amendment."[203]

Because New York's immunity to retaliation claims has not been abrogated or waived,[204] these

claims are barred on Eleventh Amendment grounds.  The FCA and NYFCA claims also fail with

---

the Government."); N.Y. State Fin. Law § 190(2)(a) (permitting qui tam civil actions to be
brought "on behalf of the person and the people of the state of New York or a local
government.").

[201] *See, e.g., Dhaliwal v. Salix Pharms., Ltd.*, 752 F. App'x 99, 100 (2d Cir. 2019) ("[B]ecause
'[t]he NYFCA follows the federal False Claims Act,' New York courts 'look toward federal law
when interpreting the New York act.'"); *New York ex rel. Khurana v. Spherion Corp.*, No. 15
Civ. 6605, 2020 WL 918740, at *2 n.2 (S.D.N.Y. Feb. 26, 2020); *Ping Chen ex rel. U.S. v.
EMSL Analytical, Inc.*, 966 F. Supp. 2d 282, 305 (S.D.N.Y. 2013).

[202] *United States ex rel. Chorches v. Am. Med. Response, Inc.*, 865 F.3d 71, 95 (2d Cir. 2017).

[203] *Clissuras v. City Univ. of New York*, 359 F.3d 79, 83 (2d Cir. 2004).

[204] *See Monsour v. N.Y. State Off. for People with Dev. Disabilities*, No. 13 Civ. 336, 2014 WL
975604, at *4 (N.D.N.Y. Mar. 12, 2014) (discussing how the Eleventh Amendment barred FCA
and NYFCA retaliation claims asserted against state official sued in her official capacity to the
extent those claims sought monetary damages).

respect to the individual defendants because "there is no individual liability for retaliation under" the federal and state False Claims Acts.[205]

Even if Plaintiff's FCA and NYFCA claims were not barred, they would not survive because Plaintiff has not alleged that he engaged in protected activity and was subjected to an adverse employment action as a result.  To prove that he engaged in a "protected activity," a plaintiff must show that "(1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is committing fraud against the government."[206]  Plaintiff does not plausibly allege any specific actions that would qualify as a protected activity.  For example, Plaintiff raised concerns to the named Defendants about the "disparities between the number of participants served and the data that was being entered into Salesforce."[207]  Reporting inaccuracies could conceivably qualify as protected activity if Plaintiff believed that this was sufficiently connected to "exposing or deterring fraud."[208]  But Plaintiff does not adequately allege he was "discharged, demoted, suspended, threatened, harassed or in any other manner discriminated against in the terms and conditions of employment, or otherwise harmed or penalized . . . because of" the protected activity.[209]  That is, Plaintiff does not allege retaliatory action because of "report[ing] the malfeasance to the named Defendants."[210]  Accordingly, the Court dismisses Plaintiff's federal and state FCA claims.

---

[205] *Parris v. N.Y.C. Hous. Auth.*, 364 F. Supp. 3d 284, 290 (S.D.N.Y. 2019); *see also Diffley v. Bostwick*, No. 17 Civ. 1410, 2017 WL 6948358, at *2 (S.D.N.Y. Dec. 6, 2017); *Monsour*, 2014 WL 975604, at *10.

[206] *Ortiz v. Todres & Co.,* No. 15 Civ. 1506, 2019 WL 1207856, at *4 (S.D.N.Y. Mar. 14, 2019).

[207] FAC ¶¶ 156-158.

[208] *Ortiz*, 2019 WL 1207856, at *4.

[209] N.Y. State Fin. Law § 191(1).

[210] FAC ¶ 159.

## V.    New York City Fair Chance Act

Plaintiff brings claims under the NYC Fair Chance Act against the individual defendants. These claims are also dismissed.

### A.    Legal Standards

The Fair Chance Act is an amendment to the NYCHRL, which "make[s] it an unlawful discriminatory practice for most employers, labor organizations, and employment agencies to inquire about or consider the criminal history of job applicants until after extending conditional offers of employment."[211]  Among other things, the Fair Chance Act prohibits the "discovery and use of criminal history before a conditional offer of employment."[212]  "With the aim of preventing an applicant's criminal history from tainting initial hiring decisions, the [Fair Chance Act] regulates precisely when in the hiring process an employer may seek and use information regarding an applicant's criminal background."[213]

### B.    Application

Plaintiff applied for a Director of Career Pathways position, but Jacobs "unilateral[ly]" determined that Plaintiff was not qualified, and the position was ultimately filled with another individual who also had a criminal history.[214]  Plaintiff does not allege facts to demonstrate that his criminal history was at issue during his hiring.  Plaintiff also asserts that "[o]n more than one occasion, [he] heard Defendants make the comment that he and others with prior convictions

---

[211] *See* N.Y.C. Local Law 63 (2015); *see also* N.Y.C. Comm'n on Human Rights, Legal Enforcement Guidance on the Fair Chance Act ("Enforcement Guidance").

[212] *Franklin v. Vertex Glob. Sols.*, No. 20 Civ. 10495, 2022 WL 392913, at *4 (S.D.N.Y. Feb. 9, 2022) (citing Enforcement Guidance at 4).

[213] *Id.*

[214] FAC ¶¶ 67, 74.

ought to be glad they had jobs."[215]  This statement, however, is not covered by the Fair Chance

Act.  Accordingly, the Court dismisses Plaintiff's Fair Chance Act claim.

## VI.    Aiding and Abetting Claims

Plaintiff alleges that Batkin, Jacobs, and Ralph aided and abetted the discrimination and

retaliation to which she was subjected, in violation of NYSHRL and NYCHRL.  Below, the

Court considers these Defendants' individual liability.

### A.    Legal Standards

The NYSHRL and NYCHRL "provide for individual liability for persons who aid, abet,

incite, compel, or coerce the doing of any of the acts forbidden thereunder, or attempt to do

so."[216]  The same standard governs aiding and abetting claims under the NYSHRL and

NYCHRL "because the language of the two laws is virtually identical."[217]  "The aider and

abettor need not have had an employer-employee or supervisory relationship with the

plaintiff."[218]  Rather, she need only have (1) "actually participate[d] in the conduct giving rise to

the discrimination,"[219] and (2) "share[d] the intent or purpose of the principal actor."[220]

### B.    Application

As explained above, the Court has determined that Plaintiff has failed to state a claim

under the NYSHRL or the NYCHRL.  Consequently, his claims for aiding and abetting liability

---

[215] The Court notes that unlike other allegations, Plaintiff did not specify which individual Defendants made the comments.  *Id.* ¶ 125.

[216] *Hagan v. City of New York*, 39 F. Supp. 3d 481, 514 (S.D.N.Y. 2014) (citing N.Y. Exec. L. § 296(6) and N.Y.C. Admin. Code § 8-107(6)).

[217] *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004).

[218] *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020).

[219] *Feingold*, 366 F.3d at 157.

[220] *Fried v. LVI Servs., Inc.*, No. 10 Civ. 9308, 2011 WL 2119748, at *7 (S.D.N.Y. May 23, 2011).

under those laws also fails.[221]

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss Plaintiff's First Amended

Complaint are **GRANTED**.

The Clerk of Court is respectfully requested to **terminate ECF Nos. 61, 64, 66**, to mail a

copy of this Order to *pro se* Plaintiff, and to close the case.


SO ORDERED.

Dated:  September 24, 2024
        New York, New York

_____
DALE E. HO
United States District Judge

---

[221]  *See Martin v. Walgreen Co.*, No. 16 Civ. 9658, 2018 WL 3773987, at *7 (S.D.N.Y. Aug. 9, 2018) ("[L]iability under the [NY]HRL and the NYCHRL must first be established as to the employer/principal before an individual may be considered an aider and abettor.").